Bingham McCutchen LLP
WILLIAM F. ABRAMS (SBN 88805)
*william.abrams@bingham.com*
PATRICK T. WESTON (SBN 211448)
*patrick.weston@bingham.com*
SAMANTHA REARDON (SBN 240068)
*samantha.reardon@bingham.com*
1900 University Avenue
East Palo Alto, CA  94303-2223
Telephone:  650.849.4400
Facsimile:  650.849.4800

Attorneys for Plaintiff
ALERE MEDICAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALERE MEDICAL, INC., a California Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>HEALTH HERO NETWORK, INC., a California Corporation,<br><br>        Defendant. | No. C-07-05054 CRB<br><br>**SUPPLEMENTAL BRIEF OPPOSING TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

A/72312135.18

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF FACTS ............................................................................................. 1
    III. ARGUMENT ................................................................................................................... 3
        A. Legal Standard .................................................................................................... 3
        B. Health Hero Cannot Make The Strong Showing Necessary To Upset Alere's Choice Of Forum ................................................................................ 4
            1. This suit does not involve any contractual agreements ............................ 4
            2. The Northern District of Illinois is not more familiar with the governing law ............................................................................................... 5
            3. Alere's choice of this forum is entitled to deference ................................. 5
            4. Both Alere and Health Hero have extensive contacts with this District ........................................................................................................ 6
            5. This District is the nexus of the activity relating to Alere's complaint ..................................................................................................... 6
            6. Litigation would be less costly in this District ........................................... 7
            7. Most non-party witnesses would be available in this District ................. 8
            8. Necessary sources of proof are located in this District ........................... 8
            9. The two remaining Jones factors do not weigh in favor of transferring this case ................................................................................. 9
        C. Transferring this case to Illinois would not serve judicial economy because the single patent at issue in the Chicago action is unrelated ................................ 9
IV. CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

Page

**Cases**

Carolina Casualty Co. v. Data Broadcasting Corp., 158 F. Supp. 2d 1044 (N.D. Cal. 2001) .................................................................................................................... 5

DealTime.com Ltd. v. McNulty, 123 F. Supp. 2d. 750 (S.D.N.Y. 2000) ...................................... 5

Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834 (9th Cir. 1986) ....................... 3, 5

Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503 (C.D. Cal. 1992) ................................................................................................................. 3, 4

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ............................................................................. 3

Hartford Fire Ins. Co. v. Westinghouse Elec. Corp., 725 F. Supp. 317 (S.D. Miss. 1989) ........................................................................................................................ 3

Italian Colors Rest. v. American Express Co., 2003 WL 22682482 (N.D. Cal.) ......................... 4

Jones v. GNC Franchising, Inc., 211 F.3d 495 (9th Cir. 2000) ................................. 4, 5, 6, 7, 8, 9

Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Service, LLC, 2006 WL 3290416 (N.D. Cal.) .................................................................................................. 4

**Statutes**

28 U.S.C. § 1404(a) (2006) ........................................................................................................... 3

35 U.S.C. §§ 1 et seq. .................................................................................................................... 5

**Treatises**

Schwartzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2007) §§ 4:731-4:753 .................................................................. 9

**ISSUES PRESENTED**

Pursuant to the Court's November 7, 2007 Briefing Order (Docket No. 16), this supplemental brief addresses the following two issues: 1) the legal standard, as it currently exists in the Ninth Circuit, for transferring cases between federal districts under 28 U.S.C. § 1404(a); and 2) whether in light of the governing legal standard, this case should be transferred to the Northern District of Illinois.

## I.   INTRODUCTION

This case should not be transferred to the Northern District of Illinois. The case currently pending in Illinois involves only one claim of one patent that is unrelated and not at issue here, and may be stayed because that patent is the subject of a reexamination request to the United States Patent and Trademark Office. Given the limited scope and current procedural posture of the case in Illinois, neither the convenience of the parties and witnesses, judicial economy, nor the interests of justice would be served by transferring this case to Illinois.

## II.   STATEMENT OF FACTS

Plaintiff Alere Medical, Inc. ("Alere") and defendant Health Hero Network, Inc. ("Health Hero") are both California corporations, and both do business in the field of home health monitoring. *See* Health Hero's Answer and Counterclaim (Docket No. 17) at ¶ 2; Declaration of Ronald D. Geraty In Support of Alere Medical, Inc.'s Supplemental Brief Opposing Transfer Pursuant to 28 U.S.C. § 1404(a) ("Geraty Decl.") at ¶¶ 2-3. Alere is a disease management company (a health services company) that uses its own contract-manufactured home monitoring equipment, while HealthHero is a product company that typically sells its equipment and software to other health services companies. *See* Geraty Decl. at ¶ 3.

Health Hero's headquarters are in Palo Alto, California. *See* Health Hero's Answer and Counterclaim (Docket No. 17) at ¶ 2. Alere was founded in California in the mid-1990's, has offices and employees in California, and is now headquartered in Reno, Nevada. *See* Geraty Decl. at ¶¶ 2, 5, 6. Alere's primary market and clients are in California, including United HealthCare (previously PacifiCare), Blue Shield of California and HealthNet. *See id.* at ¶ 4. Comparatively speaking, Alere has very little business in Illinois. *See id.*

1    Alere's founder and past Chairman of the Board, Mr. Jack Lloyd, continues to
2 work for the company and lives in the Bay Area. *See id.* at ¶ 5. Mr. Lloyd is a medical engineer
3 and inventor, and is a key participant in the development of Alere's technology. *See id.*
4 Additionally, several other key staff members of Alere live and work in the Bay Area. *See id.* at
5 ¶ 6.
6    On or about August 23, 2006, Sandeep Jaggi of Health Hero sent a letter to Alere,
7 stating Health Hero's belief that Alere was "making, using and/or selling systems, services and
8 products" that required a license to several of Health Hero's patents. *See id.* at ¶ 8. Health
9 Hero's letter included preliminary claim maps attempting to tie certain of Alere's products to
10 eleven Health Hero patents. *See id.* at ¶ 9. U.S. Patent 7,223,236 ("the '236 patent") was not
11 among these patents. *See id.* at ¶ 11.
12    Subsequently, several meetings occurred between Alere and Health Hero to
13 discuss Health Hero's claims. All of these meetings took place in California, and at least one
14 took place in East Palo Alto. *See id.* at ¶ 12.
15    On September 6, 2007, Health Hero sued Alere for infringement of a single claim
16 (claim 21) of the '236 patent in the Northern District of Illinois (the "Chicago action"). *See*
17 Declaration of Patrick T. Weston In Support of Alere Medical, Inc.'s Supplemental Brief
18 Opposing Transfer Pursuant to 28 U.S.C. § 1404(a) ("Weston Decl.") Exh. A (Chicago
19 complaint). This patent was not one of the eleven patents for which Health Hero provided claim
20 charts in its August 23, 2006 letter (*see* Geraty Decl. at ¶ 11) and in fact had only issued a few
21 months earlier, on May 29, 2007. *See* Weston Decl. Exh. C (the '236 patent).
22    On October 1, 2007, Alere filed its complaint in this action to determine its rights
23 with respect to seven of the patents that Health Hero asserted in its August 23, 2006 letter. *See*
24 Alere's Complaint (Docket No. 1); Geraty Decl. ¶ 9. The seven patents at issue in this case do
25 not share a common prosecution history, or a "parent-child" relationship with the '236 patent
26 that is at issue in the Chicago action. *Compare* Weston Decl. Exh. C (the '236 patent) with
27 Alere's Complaint (Docket No. 1) at Exhs. A-G (the seven patents at issue in this case).
28 Moreover, these seven patents were issued between February 11, 1997 and April 9, 2002—from

1  five to ten years before the '236 patent (at issue in the Chicago action) was issued. *See id.*

2  Alere answered Health Hero's complaint in the Chicago action on October 1,
3  2007. *See* Weston Decl. Exh. B (Chicago answer). No discovery or initial disclosures have
4  taken place in the Chicago action to date. *See* Weston Decl. at ¶ 5. On Friday, November 9,
5  2007, a Request for Ex Parte Reexamination of the '236 patent was filed with the United States
6  Patent and Trademark Office ("USPTO"). *See* Weston Decl. Exh. D (Reexam request). Because
7  this re-examination request involves the only patent at issue in the Chicago action, Alere has
8  filed a motion to stay that action pending the outcome of the USPTO's reexamination inquiry.
9  *See* Weston Decl. Exh. E (Chicago motion to stay).

10 **III.   ARGUMENT**

11 **A.   Legal Standard.**

12 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses,
13 in the interest of justice, a district court may transfer any civil action to any other district or
14 division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The plaintiff's choice
15 of forum is to be given substantial weight; a party seeking transfer must make "a strong showing
16 . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth*
17 *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *accord Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,
18 508 (1947), *superceded by statute on other grounds as recognized by Hartford Fire Ins. Co. v.*
19 *Westinghouse Elec. Corp.*, 725 F. Supp. 317 (S.D. Miss. 1989), ("[U]nless the balance is
20 strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

21 To support a motion for transfer under section 1404(a), the moving party must
22 establish that: (1) venue is proper in the transferor district; (2) the transferee district is one where
23 the action might have been brought; and (3) the transfer will serve the convenience of the parties
24 and promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas*
25 *Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). To determine the convenience of the parties and
26 witnesses and the interests of justice under the third prong, the Ninth Circuit considers multiple
27 factors including:

28 (1) the location where the relevant agreements were negotiated

A/72312135.18                     3

and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Italian Colors Rest. v. American Express Co.*, 2003 WL 22682482 (N.D. Cal.) at *2; *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Service, LLC,* 2006 WL 3290416 (N.D. Cal.) at *7. The existence of a forum selection clause, and the forum state's relevant public policy, may also comprise "significant factor[s] in the court's § 1404(a) analysis." *Jones*, 211 F.3d at 498-99.

      **B.**      **Health Hero Cannot Make The Strong Showing Necessary To Upset Alere's Choice Of Forum.**

On a motion to transfer, the moving party must first demonstrate that venue is proper in both the transferor and transferee courts, as required by the first two components of the *Goodyear* test. Thereafter, courts in the Ninth Circuit use the multi-factor determination set forth in *Jones* to evaluate the third prong of the *Goodyear* test. Here, venue is proper in the Northern District of California. Venue is also technically proper in the Northern District of Illinois, although it is a surprising choice because neither Alere, nor Health Hero (to Alere's knowledge), have a great deal of business or operations in Illinois. Thus, the determination of whether transfer is proper under section 1404(a) centers on the application of the ten *Jones* factors. Not only do these factors not weigh significantly in favor of transferring this action to the Northern District of Illinois, they weigh heavily against transfer. Thus, Health Hero cannot make the strong showing necessary to upset Alere's choice of forum.

      **1.**      **This suit does not involve any contractual agreements.**

Because this dispute does not involve any contractual agreements, the first *Jones* factor ("the location where the relevant agreements were negotiated and executed") is not relevant to this determination, and certainly cannot help Health Hero make the strong showing necessary to support a transfer to the Northern District of Illinois.

### 2. The Northern District of Illinois is not more familiar with the governing law.

The claims at issue in this dispute are governed by federal law (*i.e.,* the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*).  Thus, the Northern District of Illinois is not any more familiar with the governing law than this Court— at most, this factor is neutral because "either forum is equally capable of hearing and deciding those [federal] questions." *DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d. 750, 757 (S.D.N.Y. 2000).  Even so, Alere submits that the Northern District of California is a preferable forum for this dispute because it has implemented widely-respected Patent Local Rules to efficiently govern disputes such as this "which seek a declaratory judgment that a utility patent is not infringed, is invalid, or is unenforceable."  Patent L.R. 1-2.  Thus, although the second *Jones* factor is largely neutral, to the extent it weighs in this analysis at all, it weighs in favor of keeping this dispute here before this Court.

### 3. Alere's choice of this forum is entitled to deference.

Generally, courts afford considerable weight to a plaintiff's choice of forum in determining a motion to transfer.  *See Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum").  Moreover, as explained in more detail below, the majority of the key witnesses and evidence for this dispute are located in this District (as is Health Hero's headquarters).  Thus, the third *Jones* factor—Alere's choice of the Northern District of California as the forum for this dispute— weighs against transferring this case to Illinois.[1]

---

[1] Health Hero may suggest that Alere's choice of this forum should be given little weight since Alere's headquarters is in Reno, Nevada.  However:  (1) Alere has offices in California and key employees who reside in this District; (2) Alere's historical roots are in this District; (3) Health Hero's headquarters is in this District; and (4) the majority of people and events involved with the conception and prosecution of the Health Hero patents are located within this District as explained more fully below.  *See, e.g., Carolina Casualty Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (even though the plaintiff was not a resident of the district, its choice of forum should be given some deference because the district had some connection to the underlying dispute).

### 4. Both Alere and Health Hero have extensive contacts with this District.

The fourth *Jones* factor – the respective parties' contacts with the forum – weighs heavily in favor of keeping this suit in the Northern District of California. Health Hero is a California corporation, and its principal place of business is in this District (Palo Alto). *See* Health Hero's Answer and Counterclaim (Docket No. 17) at ¶ 2. Thus, Health Hero's contacts with this District are extensive.

Alere is also a California corporation. *See* Geraty Decl. at ¶ 2. And, although Alere's principal place of business moved from the Bay Area to Reno, Nevada, it still has offices in California, and key Alere witnesses who may be pertinent to this action such as Jack Lloyd, Lauren Yazolino, Robert Kolb, and Aria DiBiase reside in this District. *See id.* at ¶¶ 2, 5, 6. Alere's headquarters is now in Reno, Nevada which is much closer and more convenient to this District than the Northern District of Illinois.

Thus, both parties' significant contacts with this District weigh heavily against transferring this suit to the Northern District of Illinois.

### 5. This District is the nexus of the activity relating to Alere's complaint.

This suit is an action by Alere seeking a declaration that seven patents asserted against Alere by Health Hero are invalid and/or unenforceable. These patents were asserted in a letter sent by Health Hero from this District. *See* Geraty Decl. ¶ 8. The primary operative facts concern the conception, reduction to practice, and prosecution of the seven Health Hero patents at issue; and the primary witnesses to those facts will be the inventors and prosecuting attorneys of the patents. As shown in the table below (which summarizes information taken from the faces of the asserted patents unless otherwise indicated), the vast majority of the inventors and prosecuting attorneys for these patents—who will be key witnesses—are located within this District (highlighted in blue):

| Health Hero Patents | Name and Location of Inventor(s) | Name and Location of Prosecuting Attorney(s) |
|---|---|---|
| 6,368,273 | Stephen J. Brown (Woodside, CA)[2] | Black Lowe & Graham (Seattle, WA)[3] |
| 5,601,435 | Roger J. Quy (Belvedere, CA) | Haverstock & Assoc. (Sunnyvale, CA)[4] |
| 5,832,448 | Stephen J. Brown (Mountain View, CA) | Lumen Intellectual Property Services (Palo Alto, CA)[5] |
| 6,246,992 | Stephen J. Brown (San Mateo, CA) | Black Lowe & Graham (Seattle, WA) |
| 5,879,163 | Stephen J. Brown (Mountain View, CA); Erik K. Jensen (Stockton, NJ) | Lumen Intellectual Property Services (Palo Alto, CA) |
| 6,151,586 | Stephen J. Brown (San Mateo, CA) | Black Lowe & Graham (Seattle, WA) |
| 6,161,095 | Stephen J. Brown (Woodside, CA) | Black Lowe & Graham (Seattle, WA) |

*See* Alere's Complaint (Docket No. 1) Exhs. A-G (patents). Although one inventor (Erik Jensen of Stockton, New Jersey) and one prosecuting firm (Black, Lowe & Graham of Seattle, Washington) involved with these patents are not located in this District, they certainly have no closer connection to the Northern District of Illinois. In addition, because Health Hero's principal place of business is located in this District, its corporate records and files concerning these patents are also likely to be most easily accessed in this District. As a result, the fifth *Jones* factor also weighs against transferring this suit to Illinois.

### 6. Litigation would be less costly in this District.

Litigation costs also weigh against transferring this suit to the Northern District of Illinois. Documents pertaining to Health Hero's patent portfolio are likely to be found at its

---

[2] Although Stephen J. Brown's residence is listed at varying locations on the different patents, they are all within this District.
[3] Black Lowe & Graham's website indicates that it is located in Seattle, WA. *See* Weston Decl. ¶ 8, Exh. F.
[4] Haverstock & Associates appears to have been located in either Palo Alto or Mountain View, CA, but appears to be no longer in existence. It's principal, Thomas B. Haverstock, is now associated with Haverstock & Owens in Sunnyvale, CA. *See* Weston Decl. at ¶ 9, Exh. G.
[5] Lumen Intellectual Property Services' web site states that it is located in Palo Alto, CA. *See* Weston Decl. ¶ 10, Exh. H.

1  principle place of business (located within this District), and in the possession of the inventors
2  and prosecuting attorneys for the seven patents (the majority of whom are located in this
3  District). And now that Health Hero has asserted a counterclaim of infringement of some of
4  these patents, information regarding its sales and finances is now relevant to determine damages.
5  *See, e.g.,* Health Hero's Answer and Counterclaims (Docket No. 17) at ¶¶ 41-50. All of this
6  information is likely to be most easily accessed at Health Hero's headquarters in Palo Alto.
7      Thus, the cost of discovery and litigation will be substantially lessened if the
8  action is venued here in the Northern District of California where most of the documentary
9  evidence is likely to be found, and where most of the witnesses expected to testify or give
10 depositions are located. *See, e.g., Italian Colors*, 2003 WL 22682482 (N.D. Cal.) at *5;
11     Further, to the extent that documents or witnesses from Alere are needed, many of
12 these are located in this District or a relatively short distance away, at Alere's headquarters in
13 Reno, Nevada. *See* Geraty Decl. at ¶ 2.
14     Finally, both Alere and Health Hero are represented in this matter by counsel who
15 are located in East Palo Alto and Palo Alto, respectively. Thus, the goal of efficiency and
16 minimizing litigation costs would be best served by having this dispute venued here in the
17 Northern District of California; it would be much less efficient and more costly to conduct this
18 dispute in Illinois.

19     **7.   Most non-party witnesses would be available in this District.**
20
21     As explained above, the most likely non-party witnesses would be the inventors
22 (to the extent they are not employed by Health Hero) and prosecuting attorneys for the seven
23 Health Hero patents. And, as shown above, the majority of these people are located in this
24 District. By contrast, Alere is not aware at this time of any non-party witnesses who are needed
25 to resolve this dispute that are located in the Northern District of Illinois. Thus, the seventh
26 *Jones* factor also weighs against transfer.

27     **8.   Necessary sources of proof are located in this District.**
28     For the reasons discussed in sections 6 and 7 above, most of the necessary sources

of proof for this dispute are located within this District; thus, this factor also weighs against transferring this action to Illinois.

### 9. The two remaining *Jones* factors do not weigh in favor of transferring this case.

After stating the eight factors listed above, the *Jones* court stated that the existence of a forum selection clause, along with the forum state's relevant public policy, may also comprise "significant factor[s] in the court's § 1404(a) analysis." *Jones*, 211 F.3d at 498-99. However, these factors do not weigh for or against transfer because there is no forum selection clause at issue, and because Health Hero cannot credibly argue that the state of Illinois has any stronger public policy regarding patent rights granted under Federal law than California does.

\* \* \* \* \*

Thus, the majority of the *Jones* factors followed in the Ninth Circuit weigh decisively against transferring this action to Chicago, and the remaining ones are irrelevant to this dispute. Not one of the Ninth Circuit's stated factors weighs in favor of transfer. Accordingly, Health Hero cannot make the strong showing necessary to transfer this action to the Northern District of Illinois, and the convenience of the parties and the interests of justice require that this action be allowed to proceed in this Court.[6]

### C. Transferring this case to Illinois would not serve judicial economy because the single patent at issue in the Chicago action is unrelated.

To date, the strongest showing that Health Hero has made that could be construed as support for transferring this case to Chicago are its statements that "the Illinois action . . .

---

[6] Opinions from other courts mention various other factors that district courts might consider when determining whether transfer would be appropriate pursuant to section 1404(a). *See, e.g.,* Schwartzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group 2007) §§ 4:731-4:753. Although there are some factors that are not set forth in *Jones*, none of them weigh in favor of transfer here either. For instance, there is no issue with a statute of limitations here, there are no special venue statutes that weigh one way or the other, and while the relative docket congestion in the Northern District of Illinois is similar to this District, cases actually take slightly longer on average to get to trial in Illinois. *See* Weston Decl. at ¶¶ 11-12 and Exhs. I & J.

involves a material part of the same subject matter as the above-encaptioned matter, including claims relating to the infringement of related United States patents by Alere's products . . ." and "the parties to the Illinois action and the above-encaptioned action are identical." Health Hero's Notice of Pendency (Docket No. 7) at 1.

These broad statements do not satisfy Health Hero's burden of showing that transfer would be proper. Alere does not dispute that Health Hero has threatened and/or asserted its patents against Alere's products, or that Alere and Health Hero are the parties to both this suit and the Chicago action. However, the action before this Court will not procedurally complicate the Chicago action, nor would judicial economy be served by transferring this action to Illinois.

During Alere's discussions with Health Hero, Health Hero threatened to assert eleven of its patents against Alere's products. *See, e.g.,* Geraty Decl. ¶¶ 8-9. However, as stated above, in the Chicago action, Health Hero is asserting only one claim (claim 21) of a brand-new patent (the '236 patent) that only recently issued. *See* Weston Decl. Exhs. A and C (Chicago complaint and '236 patent). Even if the Chicago action were to progress to the claim construction stage the Chicago court would only be construing terms in one claim (claim 21) of one patent (the '236 patent) that does not share a common prosecution history or hereditary relationship with any of the seven patents at issue before this Court. Moreover, the seven patents that are at issue in this litigation were issued between February 11, 1997 and April 9, 2002— from five to ten years before the '236 patent (at issue in the Chicago action) was issued. *Compare* Alere's Complaint (Docket No. 1) ¶¶ 6-12 and Exhs. A-G *with* Weston Decl. Exh. C (the '236 patent). As a result, the prior art for the '236 patent considered by the Chicago court will likely be different than the prior art relevant to the seven patents at issue here.

Moreover, because the '236 patent is currently the subject of a re-examination request to the USPTO, and because Alere has moved to stay the Chicago action as a result, it would be neither convenient nor efficient to transfer this action to Illinois, where the likelihood of the Chicago action going forward at this time is tentative at best. It would be neither practical nor feasible to consolidate this case with the Chicago action for the same reasons.

Allowing this action to proceed before this Court will not waste the resources of

the parties or the Court.  The mere fact that some of the same Alere products might be at issue in both the Chicago action (involving one claim of the new '236 patent) and this action (involving seven older unrelated patents) does not create common questions of fact or claim construction such that there will be an unduly burdensome duplication of labor and expense or conflicting results if these cases are conducted before different Courts.

Finally, as explained above, the vast majority of the key witnesses and documents related to both cases are located here in this District, or close-by in Reno, Nevada.  Even if the Chicago action is not stayed and discovery is conducted between the parties in the Chicago action that is relevant to this dispute, the parties should certainly be able to reach an agreement that it can be used in this action as well.

Health Hero has not pointed to any specific facts that demonstrate that transferring this case to the Illinois court would be more convenient for either the parties or the witnesses, or that the location itself is central to the claims it issue.

## IV.   CONCLUSION

Health Hero has threatened Alere for some time with numerous patents in its portfolio, but then chose in September to assert a single claim from a brand-new patent in the Northern District of Illinois—an inconvenient district that neither party has a strong connection to.  Once this occurred, Alere determined that it was necessary to seek a declaration of its rights with regard to seven of the other, unrelated patents that Health Hero had been threatening to assert.  Alere did so by filing this action here, in the Northern District of California, which is unequivocally more convenient for both parties for all of the reasons set forth above, and where the weight of gravity of this dispute (including key witnesses and evidence) clearly exists.

Because Alere's choice of forum for this action is to be given substantial weight, and because Health Hero cannot make the strong showing necessary under the factors considered by the Ninth Circuit to justify upsetting Alere's choice of forum and transferring the case to the Northern District of Illinois, Alere respectfully submits that it would be improper to transfer this case pursuant to section 1404(a) under the governing Ninth Circuit legal standard.

1  DATED: November 14, 2007

Respectfully submitted,

Bingham McCutchen LLP


By: _____/s/_____
William F. Abrams
Attorneys for Plaintiff
ALERE MEDICAL, INC.


**SIGNATURE ATTESTATION PER GENERAL ORDER 45, SECTION X.B.**

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.


_____/s/_____
Patrick T. Weston

A/72312135.18

12

SUPPLEMENTAL BRIEF OPPOSING TRANSFER PURSUANT TO 28 U.S.C. 1404(A)
C-07-05054 CRB