PTO/SB/57 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO - 1465)

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

**Address to:**
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

**Attorney Docket No.: ALER-007REX**

**Date: 9 November 2007**

1. ☒ This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number **7,223,236** issued **May 29, 2007**. The request is made by:

    ☐ patent owner.   ☒ third party requester.

2. ☒ The name and address of the person requesting reexamination is:
    **Karl Bozicevic on behalf of Requestor Alere Medical, Inc.**
    **c/o Bozicevic, Field & Francis LLP**
    **1900 University Avenue, Suite 200, East Palo Alto, California 94303**

3. ☐ a. A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

    ☐ b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
    to Deposit Account No. **50-0815**; (submit duplicative copy for fee processing); or

    ☒ c. Payment by credit card. Form PTO-2038 is attached.

4. ☒ Any refund should be made by ☐ check or ☒ credit to Deposit Account No. **50-0815**.
    37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. ☒ A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed. 37 CFR 1.510(b)(4)

6. ☐ CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
    ☐ Landscape Table on CD

7. ☐ Nucleotide and/or Amino Acid Sequence Submission
    *If applicable, items a. – c. are required.*

    a. ☐ Computer Readable Form (CRF)
    b. Specification Sequence Listing on:

        i. ☐ CD-ROM (2 copies) or CD-R (2 copies); or
        ii. ☐ paper

    c. ☐ Statements verifying identity of above copies

8. ☒ A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. ☒ Reexamination of claim(s) **1-26** is requested.

10. ☒ A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on Form PTO/SB/08, PTO-1449 or equivalent.

11. ☐ An English language translation of all necessary and pertinent non-English language patents and/or printed publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. ☒  The attached detailed request includes at least the following items:

    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)

    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2)

13. ☐  A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. ☒  a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
    The name and address of the party served and the date of service are:
    **Health Hero Network, Inc.**
    **2000 Seaport Blvd., Suite 400**
    **Redwood City, California 94063**

    Date of Service: **9 November 2007**; or

    ☐  b. A duplicate copy is enclosed since service on patent owner was not possible.

15.   Correspondence Address: Direct all communication about the reexamination to:

    ☒  The address associated with Customer Number:    | 24353 |

    **OR**

☐ Firm or
Individual Name    **Bozicevic, Field & Francis, LLP**

Address

**1900 University Avenue, Suite 200  East Palo Alto**

| City | State | Zip |
|---|---|---|
| | | |

Country

| Telephone **(650) 327-3400** | Email |
|---|---|

16. ☒  The patent is currently the subject of the following concurrent proceeding(s):
    ☐ a. Copending reissue Application No. _____.
    ☐ b. Copending reexamination Control No. _____.
    ☐ c. Copending Interference No. _____.
    ☒ d. Copending litigation styled:
        **Health Hero Network, Inc. vs. Alere Medical, Inc.**
        **07CV5031, Judge St Eve, Magistrate Judge Nolan, filed September 7, 2007, U.S.**
**District Court, Northern District of Illinois, Eastern Division**

    WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

| _____ | _____11/9/2007_____ | |
|---|---|---|
| Authorized Signature | Date | ☐ For Patent Owner Requester |
| **Karl Bozicevic** | **28,807** | ☒ For Third Party Requester |
| Typed/Printed Name | Registration No | |

Attachment to Form PTO/SB/57

Providing information RE:

U.S. Patent No. 7,223,236

**DETAILED REQUEST FOR**

**EX PARTE REEXAMINATION OF**

**U.S. PATENT NO. 7,223,236**

Ex Parte Reexamination under 35 U.S.C. § 302-307 and 37 C.F.R. § 1.510 is requested of United States patent number 7,223,236 B2 (EXHIBIT 1), which issued on May 29, 2007 to Stephen J. Brown and which was assigned at issuance to Health Hero Network, Inc. (hereinafter "the '236 patent").

I.    Claims for which reexamination is requested:

Ex Parte Reexamination is requested of claims 1-26 of the '236 patent in view of the earlier disclosures in the United States patents and printed publications listed on the attached Information Disclosure Statement form (PTO/SB/08A) (EXHIBIT 2).

II.    Explanation of pertinency and manner of applying cited prior art to the claim for which reexamination is requested based on prior art:

To assist in organization this section is divided into two sections. The first section (A) describes how the prior art cited here (EXHIBIT 2) can be applied to each claim element. There are two claims charts attached. The first is EXHIBIT 3 which provides an element-by-element comparison of the claims of the '236 patent to disclosure contained within U.S. Patent 5,465,082 (part of EXHIBIT 2) which prior art was not cited during the prosecution of the application which resulted in the '236 patent. The second claims chart EXHIBIT 4 provides an element-by-element comparison of each element of the claims of the '236 patent to five other U.S. patents which are part of EXHIBIT 2 which U.S. patents were cited during the prosecution of the application which resulted in the '236 patent but not fully considered during prosecution. The second section (B) describes elements of the claims which are non-substantive claim limitations and which Requestor believes should not be afforded weight in

determining the patentability of the claims as examined in view of the cited prior art.

A.    Prior Art anticipating the '236 claims

United States patent 7,223,236 to Brown (the '236 patent) is based on U.S. application 08/233,397 filed April 26, 1994, which is a continuation-in-part (CIP) of U.S. application No. 07/977,323 filed November 17, 1992 (EXHIBIT 5).  To simplify this petition the cited prior art is prior art to the parent application filed November 17, 1992.  No arguments are based on intervening prior art between the parent filed on November 17, 1992 and the CIP application filed on April 26, 1994.  Requestor, of course, reserves the right to file a subsequent petition based on any intervening prior art that may be relevant to the claims of the '236 patent due to the inability of the '236 patent to rely on the parent application filed on November 17, 1992.

A time line of the relevant events is provided below:



The '236 patent (EXHIBIT 1) claims novelty in remotely monitoring the physiological data of a patient with (1) a microprocessor in communication with (2) a central server which is also in communication with (3) a professional computer. The patentee did not invent any of: (1) the microprocessor units, (2) the central server, or (3) devices for communicating information to and from a data management unit, i.e. a "professional computer", or even the concept of digitally sending information to and receiving information from a patient. This can be readily understood by reference to Figures 4 and 14 of U.S. Patent 5,465,082 (part of EXHIBIT 2) which was not cited during the prosecution of the '236 patent. A system which simply combines well known elements is not

patentable.[1]  However, the '082 patent shows the same combination of components as claimed in the '236 patent as can be readily understood from a review of the element-by-element comparison of the claims of the '236 patent to the '082 disclosure contained within EXHIBIT 3.  For the initial comparison see Figure 2 below in the '236 patent and compare it to Figure 14 below of the '082 patent.

---

[1] [W]hen a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious.  *KSR Int'l. Co. v. Teleflex, Inc.* 82 U.S.P.Q.2d 1385, 1395-96 (2007), attached hereto as Exhibit A.

Figure 2 of the '236 patent



*Fig. 2.*

- 5 -

Figure 14 of the '082 patent



Fig. 14

Before the application for the '236 patent was filed, those skilled in the art had devices for monitoring patient data, and it was well known that such devices could be configured to digitally transmit and receive information from a networked apparatus to a server -- see Figure 4 and 14 of the '082 patent. Further, each of the prior art references cited on the attached Information Disclosure Statement form (PTO/SB/08A) (EXHIBIT 2) disclose and describe monitoring systems which are comprised of the three components recited in the claims of the '236 patent. The attached claims charts (EXHIBIT 3 and EXHIBIT 4) show an element-by-element comparison between each element of the claims of the '236 patent and specifically quoted and cited language of six different prior art references which are listed in EXHIBIT 2. These six prior art patents are 5,465,082 (in EXHIBIT 3) and 5,390,238; 5,216,597; 5,339,821; 4,712,562; and 5,036,852 compared together in EXHIBIT 4.

If the Examiner handling the prosecution of the application which resulted in the '236 patent had seen and appreciated the '082 patent or had fully appreciated the five other patents described in EXHIBIT 4, the application would never have been allowed.

As admitted in the "background" section of the '236 patent, it was widely known that "[a]dvances in the field of electronics over the past several years [had] brought about significant changes in medical diagnostic and monitoring equipment, including arrangements for self-care monitoring of various chronic conditions". *See* U.S. Patent No. 7,223,236, Col. 1, Line 40-44.

Indeed, the patentee conceded that at the time of filing "...relatively inexpensive and relatively easy-to-use blood glucose monitoring systems have become available that provide reliable information that allows a diabetic and his or her healthcare professional to establish, monitor and adjust a treatment plan (diet, exercise, and medication)". The '236 patent, Col. 1, Line 45-49.

The '236 patent claims novelty and nonobviousness in a system that monitors a patient's condition with a microprocessor subsystem in communication with a central server, which information can be communicated to a health care professional. The application (EXHIBIT 5) which resulted in the '236 patent actually began as a "system and method for monitoring air flow from a person." All of the

original 82 claims were directed to air flow monitoring systems and devices. Because the original application upon which the '236 patent was based was not intended to be directed generically towards monitoring physiological data the '082 patent which is directed to this more generic idea contains a broader and more complete disclosure of what is encompassed by the claims of the '236 patent than the '236 patent does itself.

A quick review of Figure 4 of the '082 patent shows that it discloses details of a system which can monitor patients. The Figure also shows the basic components claimed within all of the independent claims of the '236 patent. Further, support for Requestor's position is obtained by reviewing Figure 14 of the '082 patent which shows numerous patient stations and nursing stations interconnected with a network server and central computer. These can also be viewed in combination with Figure 2 of the '082 patent which shows the patient bed with a monitoring system connected.

Requestor recognizes that the claims of the '236 patent include further details. Accordingly, each claim element and the details of the claims of the '236 patent are compared against the disclosure of the '082 patent within EXHIBIT 3. Thus, after reviewing EXHIBIT 3 and the '082 patent it will be clear that a substantial new question of patentability has been raised with respect to the patentability of the '236 patent.

Still further, each of the five patents listed in the comparative claim chart of EXHIBIT 4 further show that the elements of the claims of the '236 patent are taught within these references as taken alone or in combination with each other.

For example, the '236 patent is at least anticipated by and/or obvious in view of prior U.S. Patent No. 5,390,238 issued February 14, 1995 in the name of Kirk et al., and assigned at issuance to Motorola, Inc. (hereinafter "the '238 patent"). The '238 patent issued from U.S. Patent Application Serial No. 898,270, filed June 15, 1992.

There is no difference between the state of the art in the years before 1992 (the earliest claimed priority date, and the filing date of the '238 patent) and that claimed in the '236 patent – see EXHIBIT 4. Claimed in the '236 patent is a simple arrangement of known devices, each performing the same function they had been known to perform as shown in the '238 patent. A known technique used to

improve one general system (a central server in communication with a microprocessor for remote healthcare monitoring), when used to improve a more specific system (remote monitoring of a patient's glucose levels), is not patentable. *See* KSR, *supra*.

Each of the prior art references cited on the attached Information Disclosure Statement form (PTO/SB/08A) (EXHIBIT 2) disclose and describe monitoring systems which are comprised of the three components recited in the claims of '236 patent. The attached claims charts (EXHIBIT 3 and EXHIBIT 4) show an element-by-element comparison between each element of the claims of the '236 patent and specifically quoted and cited language of five different prior art references.

B.     Claim Elements which are NON-SUBSTANTIVE

The system claimed in the '236 patent is comprised of three interconnected components. The three components are (1) a central server, (2) a microprocessor-based subsystem, and (3) a health care professional computer. These three terms appear only in the original abstract and claims of the CIP application which is EXHIBIT 5. As such, reference to the specification of the application of EXHIBIT 4 or that of the '236 patent, to understand these terms cannot be accomplished with any degree of certainty.

The three components are claimed as components of a "physiological data monitoring system" (claims 1-24) or a "user-related monitoring systems" (claims 25 and 26). However, the terms "physiological", "physiological data", "user-related" and "user-related monitoring" do not appear anywhere in the '397 application filed on April 26, 1994 (EXHIBIT 5), and were added to the application by amendment as can be understood by a review of the file history of the '236 patent or simply by comparing the application (EXHIBIT 5) to the '236 patent (EXHIBIT 1). The lack of these terms in the original application complicates the task of determining their meaning so that prior art can be applied to the claims.

For purposes of this petition alone, Requestor will assume claim terms to be interchangeable with similar terms used in this field of technology and those used in the specification of the '236 patent.

This assumption is made only for purposes of this Request for Reexamination.



**CLAIMS OF '236 PATENT**
**PHYSIOLOGICAL DATA MONITORING**
**SYSTEM**

- Microprocessor based subsystems
- Central server
- Health care professional computer

**SPECIFICATION OF '236 PATENT**
**SELF-CARE HEALTH MONITORING**
**SYSTEM OF FIGURE 1**

- Microprocessor based unit 12
- Data management unit 10
- Doctor's computer 62

Each of the prior art references cited on the attached Information Disclosure Statement form (PTO/SB/08A) (EXHIBIT 2) disclose and describe monitoring systems which are comprised of the three components recited in the claims of '236 patent. The attached claims charts (EXHIBIT 3 and EXHIBIT 4) show an element-by-element comparison between each element of the claims of the '236 patent and specifically quoted and cited language of each of five different prior art references. To

support the claims charts of EXHIBIT 3 and EXHIBIT 4, Requestor has attached EXHIBIT 6 which is a claims chart of the claims of the '236 patent showing the claim elements which are believed to be non-substantive. The '236 patent claims a **system and not a method** and the claim terms used in the '236 claims do not limit the claimed system.

Requestor understands that in some instances a term in the claims of the '236 patent is not the identical term used in prior art reference of the charts of EXHIBIT 3 and EXHIBIT 4. For example, U.S. patent 5,339,821 (the '821 patent) does not specifically use the phrase "physiological data monitoring system." Instead the '821 patent teaches "The home monitoring system---for measuring blood pressure, the pulse --- and so forth." (col. 2, ln 36-39). The '236 patent, however, issued from an application (EXHIBIT 5) which does not use this term, i.e. never mentions "a physiological data monitoring system." There are other examples of situations where a specific term of the '236 claims is not identically present in the cited art. For example, the '236 claims use the term "central server" and the '821 patent uses "host computer". The term "central server" is in the original Abstract of the application (EXHIBIT 5) which resulted in the '236 patent, but it does not appear within the specification of either EXHIBIT 5 or the specification of the '236 patent. This may show that the '236 patent owners intended the terms they used to be interchanged with other terms used in this filed of technology.

The interchangeability of terms in the field is necessary for the claims of the '236 patent to have a supporting written description (which Requestor does not admit to) and an enabling disclosure (which Requestor does not admit to) under 35 U.S.C. §112, 1st paragraph. If the interchangeability of the claim terms in the '236 patent is assumed to provide support for these terms even through the terms are not used in the specification of the '236 patent, then the interchangeability of terms in the claims of the '236 patent should also be assumed with respect to the prior art. When the interchangeability of terms in the '236 patent claims is made with terms in the prior art of EXHIBIT 2 and the non-substantive language is removed from the '236 claims, the prior art anticipates and renders invalid the '236 patent under 35 U.S.C. §102. This is demonstrated in the six block diagrams below when these diagrams are viewed more specifically against the detailed comparison of the '236 claims to the prior art provided in EXHIBIT 3 and EXHIBIT 4 attached.

CLAIMS OF THE '236 PATENT

PHYSIOLOGICAL DATA MONITORING SYSTEM

DISCLOSURE OF U.S. PAT. NO. 5,465,082

APPARATUS FOR AUTOMATING ROUTINE COMMUNICATION



Microprocessor based subsystems

Central server

Health care professional computer

Portable reader 2310 of Figure 4 and/or patient station micro-computer of Figure 4

A network server 430 of Figure 4

Nurse station 1419 of Figure 14

**CLAIMS OF THE '236 PATENT**

**PHYSIOLOGICAL DATA MONITORING SYSTEM**

↓

| Microprocessor based subsystems |

↕

| Central server |

↕

| Health care professional computer |

**DISCLOSURE OF U.S. PAT. NO. 5,390,238**

**HEALTH SUPPORT SYSTEM**

↓

| Patient operated remote modules/a monitoring terminal |

↕

| A network server |

↕

| A health support unit |

CLAIMS OF THE '236 PATENT

DISCLOSURE OF U.S. PAT. NO.
5,019,974

PHYSIOLOGICAL DATA MONITORING
SYSTEM

DIABETES THERAPY MANAGEMENT
SYSTEM, APPARATUS AND METHOD

| Microprocessor based subsystems |
| :---: |
| ↕ |
| Central server |
| ↕ |
| Health care professional computer |

| A patient operated monitor/recorder |
| :---: |
| ↕ |
| A master computer |
| ↕ |
| An interface unit |

CLAIMS OF THE '236 PATENT

PHYSIOLOGICAL DATA MONITORING

SYSTEM

↓

Microprocessor based subsystems

↕

Central server

↕

Health care professional computer

DISCLOSURE OF U.S. PAT. NO. 5,339,821

HOME MEDICAL SYSTEM AND MEDICAL APPARATUS FOR USE THEREWITH

↓

Medical apparatus 8 that includes a telecommunication line 4

↕

Host computer 5

↕

Medical terminal equipment/liquid crystal display unit

CLAIMS OF THE '236 PATENT

PHYSIOLOGICAL DATA MONITORING SYSTEM

DISCLOSURE OF U.S. PAT. NO. 4,712,562

OUTPATIENT MONITORING SYSTEMS





CLAIMS OF THE '236 PATENT

DISCLOSURE OF U.S. PAT. NO. 5,036,852

PHYSIOLOGICAL DATA MONITORING SYSTEM

MEDICAL EQUIPMENT MONITOR APPARATUS AND METHOD



In support of Requestor's position that much of the language of the '236 claims is directed to non-substantive limitations, Requestor refers to the chart of EXHIBIT 6 and points out that it is generally held that new, and even unobvious, uses of an old composition, which has been in no way changed, are not patentable.[2]  For example, in *In re Thuau*,[3] the claimed composition had been previously used as a tanning agent, but the applicant discovered it had therapeutic value and claimed it as "[a] new therapeutic product for the treatment of diseased tissue..."  The court found that such a claim lacked patentability over the prior art.[4]

In a similar case,[5] the claims under rejection set forth in the preamble "copy sheets for duplicating machines," and, that moistened sheets of prior patents were not being used for that purpose. But, the court stated that the use to which the moistened sheet is to be put cannot lend patentability to an old method of moistening a sheet.[6]  Here, the use that computer components are to be put can not add patentable weight to a previously known system of components.

Thus, where the applicant has discovered a previously unknown function or property in an old composition of matter, such a discovery does not constitute a new use.[7]  As a matter of claim drafting, therefore, ***the discoverer of a new use must protect his discovery by means of process or method claims and not product claims***.

**Here, the '236 patent claims a system and is not claiming a method of monitoring a patient**.  For example, the independent claims of the '236 patent recite a system, which is made up of

---

[2] *In re Thuau*, 1943 C.D. 390, 57 U.S.P.Q. 324 (C.C.P.A.).
[3] *Ibid.*
[4] The court stated that "[t]o allow a patent for an old composition without change in any way, merely because it may be used for a specified purpose, would result in a situation where two compositions of exactly the same character could be sold by merchants to consumers, but if one of the compositions was not made by the patentee or his assignee or licensee, the merchant might be liable to suit for infringement if the composition was used by the purchaser for therapeutic purposes, and the user would certainly be liable to such a suit."
[5] 166 F.2d 193, 76 U.S.P.Q. 573 (C.C.P.A. 1948).
[6] *In re Laughlin*, 1931 C.D. 469, 9 U.S.P.Q. 126, 48 F.2d 921 (C.C.P.A.); *In re Fischer*, 1940 C.D. 752, 46 U.S.P.Q. 217, 113 F.2d 492 (C.C.P.A.); *and see Brown v. 3M*, 265 F.3d 1349, 1351, 60 U.S.P.Q.2d 1375, 1376 (Fed. Cir. 2001) stating "[w]hen a claim covers several structures or compositions, either generically or as alternatives, **the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art**.".
[7] *In re Tomlinson*, 150 U.S.P.Q. 623 (C.C.P.A. 1966).

component parts. These parts are each known devices which are also known to have been interconnected by others (see EXHIBIT 2 and the block diagrams above). Specifically, the '236 patent claims specify a central server arranged to receive and communicate data; (at least one microprocessor) configured to present information; (a central server) arranged to establish a communication link; (a computer) in signal communication with; (a central server) configured to send data. These are shown in the prior art listed in EXHIBIT 2 as shown in detail in EXHIBIT 3 and EXHIBIT 4.

Further, it has been held that phrases such as "arranged to receive" and "configured to present" do not constitute structural limitations in any patentable sense. In *In re Hutchinson*,[8] the court held that the recitation that material is "adapted to" perform a function is not a positive limitation, but only requires the ability to so perform. Similar phrases are highlighted in bold in the claims of the '236 patent of chart of EXHIBIT 6. **The use of phrases such as those used in the '236 patent claims do not add patentable weight to the claims**. The devices, hardware and software of the prior art as shown in EXHIBITS 2, 3 and 4 are all capable of performing the intended function of the systems set forth in claims 1-26 of the '236 patent.

III.    Statement pointing out substantial new questions of patentability:

Requestor asserts that substantial new questions of patentability are raised with respect to the '236 patent and those questions are raised in four categories. Each of the three categories has a substantial new question of patentability raised with respect to each of the prior art references of EXHIBIT 2.


A.    NEWLY CITED PRIOR ART

The '082 patent was not cited during the prosecution of the application which resulted in the '236 patent. Even a quick review of the '082 patent such as a review of Figures 4 and 14 by one skilled in the art shows that the '082 patent is particularly relevant with respect to the claims of the '236 patent. This becomes even more clear when the claims of the '236 patent are considered against the disclosure

of the '082 patent as is shown within EXHIBIT 3. Thus, based on the '082 patent alone a substantial new question of patentability is raised with respect to the '236 patent and reexamination of the '236 patent should granted and is specifically requested here.

### B.    NEW PTO GUIDELINES UNDER KSR

Second, the Patent Office has issued new guidelines for examination of questions of patentability under 35 U.S.C. §102 and 103 in view of *KSR Int'l. Co. v. Teleflex, Inc.* 82 U.S.P.Q.2d 1385 (2007). Due to this new ruling, and even without bring specific portions of specific pieces of prior art to the attention of the Office, a substantial new question of patentability is raised under either of, or both of (1) *KSR* and (2) the new guidelines as regards to the claims of the '236 patent due to the similarity of the claims of '236 patent to prior art actually applied by the Patent Office during prosecution.

The Office had already applied art (U.S. Patent Nos. 4,712,562 and 4,173,971 which are cited in EXHIBIT 2) that the Office believed was nearly anticipatory of the claims of the '236 patent. The claims were only allowed after specific functional limitations were added. For example, reference is made to the functional limitation added to the last paragraph of independent claims 21, 22 and 25 (*see* EXHIBIT 7). Consideration should be given to deciding whether any of these added limitations add patentability to the claims under *KSR* and the new guidelines issued by the Office. The attention of the Office is directed to the '821 patent at col. 6, lines 14-28 regarding the limitation added to claims 21, 22 and 25 just prior to their allowance and other cites provided in EXHIBIT 3.

Still further, the patentability of the claims due to the non-substantive limitations should be considered under (1) *KSR* and (2) the new Patent Office guidelines in view of each of the patents cited in EXHIBIT 2 and further shown in EXHIBITS 3 and 4 and explained here.

---

[8] *In re Hutchison*, 154 F.2d 135, 139, 69 U.S.P.Q. 138, 142 (C.C.P.A. 1946).

C.    CITED ART NOT FULLY CONSIDERED

Third, the Office will note that each of the prior art references of EXHIBIT 4 is listed on the face of the '236 patent. However, the '236 patent lists hundreds of references. Each of these references could not possibly have been fairly considered for its relevance to the claims of the '236 patent. Examiners simply do not have the time to fully consider so many references. This is particularly true when electronic searching is hindered by the use of large numbers of interchangeable terms. Electronically searching the art for a given term and not finding the term means very little when there are so many interchangeable terms used, as is the case here. If the original application (EXHIBIT 5) upon which the '236 patent is based was searched electronically for significant terms such as "physiological data" or even "physiological" by itself such an electronic search would not have resulted in "hits." Thus, even though the references of (EXHIBIT 4) are listed on the '236 patent, these references as well as others listed on the '236 patent, were not fully considered and raise a substantially new question of patentability.

D.    FUNCTIONAL LIMITATIONS DO NOT LIMIT DEVICE CLAIMS

Fourth, many limitations added to the independent claims during prosecution of the '236 patent are not substantive limitations. Thus, if these functional limitations are discounted as not limiting device type claims, and the prior art cited here (EXHIBIT 2) were fully considered, the '236 patent claims would be held invalid, particularly in view of *KSR* and the new guidelines issued by the Office after *KSR*.

The added limitation of the final paragraph of independent claims 21, 22 and 25 is that the central server stores additional data and then provides that data to the user's computer when a communication link is established (see EXHIBIT 7). This is a feature of all interconnected computers and is so common that others (including the '236 disclosure itself) often fail to mention this function. Under *KSR* and the case law cited above, this limitation does not add patentable weight to the claims.

The systems the '236 patent clearly fail to recite any novel and/or nonobvious subject matter.

There is no difference between the prior art (EXHIBIT 2) and that which is claimed in the '236 patent. Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress. *See* <u>KSR</u>, *supra.* In the '236 patent, no advance at all is covered by the '236 claims. Had the Patent Office seen the '082 patent or fully appreciated the other art cited herein (EXHIBIT 2) during the prosecution of the application for the '236 patent, the Patent Office would have arrived at exactly the same conclusion, i.e., that prior art anticipates the claims of the '236 patent or at least renders the claims obvious under 35 U.S.C. §103.

*KSR* also clearly calls into question the validity of the '236 patent. The Supreme Court squarely held that even if there is no explicit teaching, suggestion, or motivation to combine prior art teachings, a patent claim which combines familiar elements according to known methods is likely to be obvious. *KSR,* 82 U.S.P.Q.2d at 1395-1398. This is especially true when a patent claim recites a simple arrangement of old elements with each performing the same function it had been known to perform. *Id.* at 1395.

The '236 patent claims a system wherein patient monitoring and digital interaction therewith is achieved via a central server in communication with a microprocessor, such as a hand-held device.

All the materials, devices and concepts involved in this system have long been shown in the prior art. The '236 patent claims that an invention lies in claiming the elements of the system as performing specific functions, which functions are already known. Yet, as stated above, such a combination is not patentable and the functional language is not a substantive limitation of these device claims.

The Supreme Court has recently considered the Patent Office's treatment of U.S.C. §103 and unanimously ruled in *KSR* that the prior standard of applying that statute was "too rigid" and can lead to patents for ordinary innovation which might stifle, rather than promote the progress of the useful arts under the United States Constitution, Article I, §8, cl. 8. *KSR,* 82 U.S.P.Q.2d at 1400.

Accordingly, for the reasons given above as supported by the attached EXHIBITS and cited statutes and case law, Ex parte reexamination of claims 1-26 of U.S. Patent No. 7,223,236 to Stephen J. Brown is respectfully requested.

The Commissioner is hereby authorized to charge any fees under 37 C.F.R. §§ 1.16 and 1.17 which may be required by this paper, or to credit any overpayment, to Deposit Account No. 50-0815, order number ALER-007REX.

Respectfully submitted,

BOZICEVIC, FIELD & FRANCIS LLP

Date: _9 / NOV / 2007_    By: _____

Karl Bozicevic
Registration No. 28,807

Date: _9 November 2007_    By: _____

Gina Freschi
Registration No. 52,062

Encl.  EXHIBITS 1-7

BOZICEVIC, FIELD & FRANCIS LLP
1900 University Avenue, Suite 200
East Palo Alto, California 94303
Telephone:  (650) 327-3400
Direct:  (650) 833-7735
Facsimile:  (650) 327-3231

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing REQUEST FOR REEXAMINATION AND EXHIBITS were served this 9th day of November 2007 on the patent owners by causing a true copy of same to be deposited as first-class mail, pre-paid, for delivery to:

Sandeep Jaggi, Ph.D.
Senior Vice President, Intellectual Property
General Counsel & Corporate Secretary
Health Hero Network, Inc.
2000 Seaport Blvd. Suite 400
Redwood City, CA 94063

Karl Bozicevic
Reg. No. 28,807
Attorney for Third Party Requestor
BOZICEVIC, FIELD & FRANCIS LLP
1900 University Avenue, Suite 200
East Palo Alto, California 94303
Telephone:  (650) 327-3400
Facsimile:  (650) 327-3231